# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **YOLANDA LANDRY** | **CASE NO. 2:19-CV-00465** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LEESVILLE REHABILITATION HOSPITAL LLC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 28] filed by defendant Leesville Rehabilitation Hospital ("LRH") in response to the employment discrimination suit filed by Yolanda Landry. Landry opposes the motion. Doc. 34.

### I.
### BACKGROUND

This suit arises from Landry's employment as a rehabilitation nurse technician at LRH, an inpatient rehabilitation facility in Leesville, Louisiana. In November 2017 Landry, who is an African-American woman, complained to her supervisor that she had been the victim of inappropriate sexual contact by a patient. A few minutes later, the patient buzzed her to his room and called her a "sexy, beautiful black woman." Days later, after hearing that the patient was spreading rumors that she and others were sleeping on the job, Landry confronted him and allegedly caused him to startle and aggravate his back injury. The patient's wife complained to his physician, to the LRH director of nursing, and to the LRH

hospital administrator. After an investigation, Landry was terminated from her employment at the hospital.

Landry filed a charge of discrimination with the EEOC, raising allegations of race- and sex-based discrimination and retaliation. Doc. 1, att. 2. The EEOC issued a dismissal and notice of suit rights, and Landry timely filed suit in this court on April 12, 2019. Doc. 1, att. 3. Here she raises claims of sexual harassment, discrimination, and retaliation against LRH under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* LRH now moves for summary judgment, asserting that Landry cannot establish a prima facie case for any of her claims. Doc. 28.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

A plaintiff may prove intentional retaliation or discrimination under Title VII using either direct or circumstantial evidence. When circumstantial evidence is involved, the court uses the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze the claim. Under that framework, the plaintiff must first establish a prima facie case by showing, in the case of a discrimination claim, that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged or otherwise suffered adverse employment action; and (4) she was treated less favorably than members outside of her protected class or was replaced by a member outside of that class. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 363 (5th Cir. 2004). If the plaintiff makes this showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory motive for its action. *McCoy v. City of Shreveport*, 492

3

F.3d 551, 557 (5th Cir. 2007). At the final stage, the burden shifts back to plaintiff to show that the employer's explanation is not true and is instead a pretext for the real discriminatory and/or retaliatory purpose. *Id.*

### A. Sexual Harassment Claim

Sexual harassment is a form of illegal employment discrimination. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012). Sexual harassment under Title VII generally falls into two categories: (1) a "quid pro quo" claim and (2) allegations that a supervisor's sexual harassment created a "hostile work environment." *See, e.g.*, *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000). To establish a prima facie hostile work environment claim, as alleged here, the plaintiff must show that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her race, gender, etc.; (4) the harassment was severe enough to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the discrimination but failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Here Landry alleges that she suffered sexual harassment through the treatment she received from patient John Doe, which her employer failed to remedy.[1] LRH does not dispute the first three elements of her claim but maintains that she cannot meet her burden as to the severity of the harassment or the employer's knowledge.

---

[1] Coworkers and non-employees may be the source of sexual harassment, but liability only arises under Title VII if the plaintiff can show that the employer knew or should have known about the harassment and yet allowed it to persist. *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 321–22 (5th Cir. 2019).

4

On the severity element, an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Because Title VII is "only meant to bar conduct that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace," courts have set a high standard for determining what constitutes a hostile work environment. *Lewis v. M7 Prods., LLC*, 427 F.Supp.3d 705, 720 (M.D. La. 2019) (internal quotation omitted). The conduct must be both subjectively and objectively offensive, meaning that the victim perceived the environment as hostile or abusive and that a reasonable person would do likewise. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Courts examine such a claim based on the totality of the circumstances, looking to the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it "unreasonably [interfered] with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). "No single factor is determinative." *WC&M Enters., Inc.*, 496 F.3d at 399.

Landry's claim arises from her treatment by a single patient over a brief period. "[I]solated incidents, **if egregious**, can alter the terms and conditions of employment." *Harvill v. Westward Comms., LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (emphasis added). Landry complains of three interactions with John Doe, all of which occurred in November 2017: (1) when he put his hand on her buttocks as she was helping him to his bed, (2) shortly thereafter, when he buzzed her to his room and told her she was "a sexy, beautiful

5

black woman," and (3) a few days later, when she confronted him over his allegations that staff members were sleeping on the job, to which he allegedly responded, "Get the [redacted] out of here."

Only the first two interactions appear to qualify as sexual harassment, and they are not sufficiently egregious to give rise to a claim under Title VII. She complains, in essence, of one instance of inappropriate physical contact of brief duration and one instance of insulting/suggestive words. Yet she has made no allegation that these interactions did have any impact on her employment, until she took it upon herself to confront him. While the conduct was undoubtedly subjectively and objectively offensive, it was of such limited duration and insufficiently egregious to rise to the level of actionable sexual harassment under Title VII. Accordingly, the claim must be dismissed and the court need not consider defendant's arguments on the final element of the prima facie case at this stage.

### B. Racial Discrimination Claim

Landry maintains that she was fired because of her race and that she was treated less favorably than white employees who were the subject of complaints. LRH asserts that it is entitled to summary judgment on this claim because Landry was not qualified for the position in light of her treatment of patient John Doe and because her white comparators were not sufficiently similar.

On a racial discrimination claim under Title VII, an employee who offers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken under "nearly identical circumstances." *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009). In the case of an employee terminated for an alleged violation,

he must show that the conduct drawing the adverse employment decision was "nearly identical" to that of the proffered comparator who allegedly drew a dissimilar decision. *Id.* at 260. The similarity may turn on the comparable seriousness of the offenses, rather than how they are coded, and the court takes the perspective of the employer at the time of the adverse decision. *Turner v. Kansas City So. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

LRH's employee handbook divides violations into "Category I" and "Category II" offenses. Doc. 34, att. 17, p. 4. Category I offenses "are the most serious and subject the employee to immediate discharge without rehire privileges." *Id.* They include but are not limited to inappropriate behavior towards a patient, sleeping on duty, willful negligence, and using abusive or vulgar language towards a patient, employee, or visitor. *Id.* at 4–5. Category II offenses, on the other hand, "are less serious in nature unless they are recurring" and are addressed through a progressive disciplinary system. *Id.* at 5. These include but are not limited to loitering or loafing, leaving work before a specified time, and discourtesy towards a patient, employee, or visitor. *Id.*

LRH Administrator Jack Causey launched an investigation into Landry, in accordance with handbook procedures for Category I offenses, after receiving a complaint from John Doe's wife and confirming with Doe's physician that he had received a request to transfer him to another facility. Doc. 28, att. 20; *see* doc. 34, att. 17, p. 4. Supervisor Vicki Turner, who witnessed the incident, provided a statement. She recalled that Landry had approached her with the news that Doe was complaining of staff sleeping during the night shift after no one would take him out for a smoke break and that she (Landry) wanted Turner to accompany her to Doe's room to discuss it with him. Doc. 28, att. 13. Turner

7

then recalled that Landry entered the dark room, "flipped on the bright overhead light without warning," and directed a "forceful, verbally aggressive speech" at Doe, who had been asleep. *Id.* Turner stated that Landry was a good, dependable worker but that she was also "consistently argumentative and confrontational" with coworkers and patients. *Id.* Causey also took statements from Kristina Cobb, another nurse at LRH. Cobb recalled that Landry admitted confronting Doe over allegations of staff sleeping during their shifts and that Doe complained to her of pain and having pulled something in his pelvic area as a result of being startled by Landry. Doc. 28, atts. 16 & 17.

Causey met with Cobb, Director of Nursing Elizabeth Bennett, and Landry on November 27, 2019. Landry provided a written statement that differed considerably from the accounts above. She asserted that she had knocked on the door, introduced herself, and then told Doe that she did not want him to think he was being neglected but that the staff had jobs and families to think about. Doc. 28, att. 12, p. 1. She also provided further background on Doe's irritation with not being taken out to smoke during the night and his harassment of her. *Id.* at 2–4. Finally, during her interview with Causey, she began making accusations against other current and former LRH staff. Doc. 28, att. 18. Nonetheless, Causey terminated her employment.

As comparators Landry identifies the following white LRH nurses who allegedly committed offenses involving patients but were not terminated: (1) Greta Gautreaux and Loretta Lottinger, who were the subject of a complaint for inappropriate use of restraints on a patient; (2) Tyler Lacaz, who was the subject of a complaint for leaving a patient unattended in the bathroom after the patient fell and injured himself; (3) Emily Newman

and Tadez Richard, who were alleged by a psychiatric patient to have left him unattended in the shower for hours and who also allegedly refused to bathe a patient with a skin condition; (4) Cindy White, who was counseled about the tone she used when asking a patient about incontinence.[2]

The only evidence regarding these comparators are the deposition testimony of Landry, Nursing Director Elizabeth Bennett, and supervisor Vicki Turner. With regards to Gautreaux and Lottinger, Landry recalled that a patient's relative reported the facility to a state agency after a patient was placed in restraints. Doc. 34, att. 2, p. 14. Bennett testified, however, that she did not regard the nurses' conduct as inappropriate because they had placed the patient in restraints in order to keep him in his wheelchair. Doc. 34, att. 12, p. 22. As for Lacaz, Bennett testified that he was written up for leaving a patient unattended after the patient fell off of the toilet and sustained a head laceration. *Id.* at 24. Bennett agreed that this was "inappropriate conduct," especially in light of the fact that the patient was recovering from a stroke and had balance issues. *Id.* As for the shower incident involving Newman and/or Richard, Bennett stated that the investigation revealed that the patient had only been left in the shower for "a minute or two" while the nurse retrieved towels.[3] *Id.* at 22. Landry also alleged that Newman and Richard refused for three days to bathe a patient who had a condition causing his skin to flake off, until she took it upon

---

[2] Landry also points to other comparators who allegedly slept during their shifts. Though this is also identified as a Category I offense, the court finds it insufficiently similar to the patient-related offenses to provide an appropriate comparison under the *McDonnell-Douglas* framework.

[3] Landry complains that Bennett relied on accounts from other staff members in reaching this determination, rather than looking at surveillance footage. However, Bennett testified that the surveillance footage was not easy to retrieve and Landry presents no competent evidence to undermine the investigation results. *See* doc. 34, att. 12, p. 23.

9

herself to do so. Doc. 34, att. 2, pp. 13–14. Bennett did not recall this incident but stated that she would regard it as "insubordination" rather than "inappropriate conduct." Doc. 34, att. 12, pp. 19–20. Finally, Vicki Turner recalled that she had counseled an aide (Cindy White) to use a less accusatory tone after hearing her ask a patient about incontinence in a manner that might leave the patient feeling embarrassed. Doc. 34, att. 7, p. 23.

None of the above comparators provides a sufficient basis for showing that Landry was treated less favorably than similarly situated white coworkers. Landry was terminated after an investigation corroborated a complaint that she had entered a patient's room without warning and spoken to him in a confrontational manner. The Fifth Circuit has made clear that "nearly identical" is not synonymous with "identical." *Lee*, 574 F.3d at 260. Still, the differences in conduct drawing the adverse action must be too small to account for the differences in treatment between plaintiff and comparator. *See id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). That is not the case here. None of the incidents described above, to the extent any misconduct was verified, involved **intentional** aggression towards or mistreatment of a patient. Accordingly, it is understandable that only Landry's conduct would result in termination. Landry fails to carry her burden of making out a prima facie case and summary judgment must also be granted as to this claim.

C. **Retaliation Claim**

To establish a prima facie claim of retaliation, the plaintiff must show that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse action against her; and (3) there is a causal link between the two. *Banks v. E. Baton Rouge Par.*

10

*Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). LRH asserts that Landry cannot meet her burden on the first prong, because her complaints about Doe's behavior did not qualify as a protected activity. Landry maintains that she satisfies this prong because she reported what she reasonably believed was employment discrimination.

Under Title VII's anti-retaliation provisions, "protected activity" includes "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3a. The plaintiff need not show that the conduct she opposed rose to the level of a Title VII violation, but she "must at least show a reasonable belief that it did." *Taliaferro v. Lone Star Implementation Co.*, 693 F. App'x 307, 310 (5th Cir. 2017) (quoting *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 237 (5th Cir. 2016)). In determining what constitutes a "reasonable belief," the court looks to the frequency and severity of the conduct as well as the context in which the employee opposed the conduct. *Id.* (citations omitted).

Importantly, as described above, an employer is only liable under Title VII for harassment by third parties if it knew or should have known of the conduct but allowed it to persist. *Gardner*, 915 F.3d at 321–22. Landry testified that she reported the inappropriate touching to Turner, her immediate supervisor, and said that the next time patient John Doe called she would need someone to go in there with her. Doc. 34, att. 2, p. 6. She further testified that a fellow employee agreed to accompany her but that when Doe buzzed a few minutes later and requested "the black aide" she went to his doorway. *Id.* Landry did not mention whether anyone went with her, but it was at this point that Doe called her a "sexy, beautiful black woman." *Id.* Landry testified that she reported this incident to Turner as

well and that Turner did nothing, but she also fails to allege any further instances of harassment from Doe towards herself.[4] *See id.* at 6–8. Therefore there is no basis for a reasonable person to assume that LRH had committed a Title VII violation, and her dismissal could not have been based on her opposition to such conduct. Summary judgment must be granted on this claim as well.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 28] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on this 24th day of June, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[4] Landry testified that Doe treated staff members rudely when Turner would not allow him to go outside and smoke, leading to his allegations that staff were sleeping on the job and her eventual confrontation of him, but alleges no other substantive exchanges with him until that final confrontation.